**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **VIOLET CROWN CINEMAS, LLC,** §<br>*Plaintiff* §<br>§<br>v. §<br>§<br>**INTERNATIONAL DEVELOMENT** §<br>**MANAGEMENT, LLC; WATERSHED** §<br>**5 STUDIOS, LTD; and WATERSHED** §<br>**5 MANAGEMENT, LLC,** §<br>*Defendants* § | **CIVIL NO. 1:21-CV-01142-RP** |

**ORDER AND REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant International Development Management's Motion to Dismiss Plaintiff Violet Crown Cinemas, LLC's First Amended Complaint, filed February 9, 2022 (Dkt. 14); Plaintiff's Motion for Leave to Amend, filed April 1, 2022 (Dkt. 19); and the associated response and reply briefs. On April 25, 2022, the District Court referred the motions to the undersigned Magistrate Judge for Report and Recommendation and disposition, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I. Background

Plaintiff Violet Crown Cinemas, LLC ("Violet Crown") opened a movie theater in Austin, Texas under the mark VIOLET CROWN in 2011. *See* First Amended Complaint (Dkt. 9) ¶ 1 & Exh. A (Dkt. 9-1). Violet Crown since has expanded, with locations in Santa Fe, New Mexico and Charlottesville, North Carolina, and is due to open a theater in Dallas, Texas this year. Dkt. 9 ¶ 2. Violet Crown Austin exhibits motion pictures, "provides comprehensive restaurant and bar services," and "also occasionally hosts live entertainment." *Id.* Violet Crown's websites are located

1

at the domains violetcrown.com, violetcrowncinema.com, and violetcrowncinemas.com. *Id.* ¶ 1. Plaintiff also owns several U.S. trademark registrations for VIOLET CROWN, in plain and stylized form, for movie theaters, production and distribution of motion pictures, and bar and restaurant services, as well as a registration for VIOLET CROWN CINEMA for movie theaters. *Id.* ¶ 3 & Exhs. A through E, Dkts. 9-1 through 9-5.

Violet Crown alleges that Defendant Watershed 5 Studios, Ltd. ("Watershed"), which "appears . . . to be a branding or marketing company," registered the domain name violetcrownaustin.com on or about February 12, 2020, and that Defendant International Development Management, LLC ("IDM") intends to develop a 20,000-seat amphitheater near Austin in Travis County and call it the "Violet Crown Amphitheater." Dkt. 9 ¶¶ 6, 22, 24. Violet Crown further alleges that: "Beginning in October 2021, Violet Crown's management started receiving inquiries about a newly proposed VIOLET CROWN AMPHITHEATER from individuals who believed Violet Crown was the intended developer." *Id.* ¶ 24.

Violet Crown filed its original complaint against IDM on December 16, 2021, asserting claims for federal and common-law trademark infringement and unfair competition, dilution under federal and state law, and injury to business reputation under state law. Dkt. 1. On January 26, 2022, Violet Crown filed its first amended complaint, seeking a preliminary and permanent injunction under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and transfer of the domain name violetcrownaustin.com under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

After IDM filed the instant Motion to Dismiss the First Amended Complaint for failure to state a claim, Violet Crown filed its Motion for Leave to Amend and proposed amended complaint. IDM opposes amendment as futile as to Violet Crown's claim for injunctive relief. Dkt. 21.

## II. Legal Standards

### A. Motion to Amend

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading "once as a matter of course," but afterward "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(1)-(2). "The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).

Rule 15(a) "evinces a bias in favor of granting leave to amend." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (citation omitted). "Leave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted). Leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of the amendment." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (quoting *Marucci*, 751 F.3d at 378). Absent a substantial reason, "the discretion of the district court is not broad enough to permit denial." *Mayeaux*, 376 F.3d at 425 (citation omitted). Denying a motion to amend is not an abuse of discretion if amendment would be futile. An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. *N. Cypress Med. Ctr.*, 898 F.3d at 478.

### B. Motion to Dismiss

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter

"to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry generally is limited to (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III. Analysis

The Court first addresses Violet Crown's motion to amend. Violet Crown asserts two claims in its proposed Second Amended Complaint (Dkt. 19-1). First, it seeks preliminary and permanent injunctive relief against IDM's use of the name "Violet Crown Amphitheater" or other use of the VIOLET CROWN mark, pursuant to 15 U.S.C. §§ 1116(a) and 1125(a) and Section 16.103 of the Texas Business and Commerce Code. Second, Violet Crown seeks transfer of the domain name violetcrownaustin.com from Watershed to it under the ACPA.

**A. Anticybersquatting Claim**

Violet Crown does not assert a cybersquatting claim against IDM in its proposed Second Amended Complaint, and Watershed has not opposed Plaintiff's Motion to Amend. Accordingly, Violet Crown's Motion to Amend is granted with respect to its claim under the ACPA.

**B. Claim for Injunctive Relief**

The Court next considers IDM's assertion that Violet Crown's claim for injunctive relief is futile. IDM argues that Violet Crown fails to plead an injury in its Second Amended Complaint because it has pled neither imminent infringement nor commercial use.

A court should issue a preliminary injunction only if the movant establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Jiao v. Xu*, 28 F.4th 591, 597-98 (5th Cir. 2022). To obtain an injunction for trademark injury, a party must show that it is the senior user of a mark eligible for protection, a likelihood of confusion between the marks, and irreparable injury for which there is no adequate legal remedy. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008). To obtain a permanent injunction, for the first element, a plaintiff must show actual success on the merits. *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

1. **Federal and State Statutes**

Title 15 U.S.C. § 1116(a), Lanham Act Section 34(a), provides for injunctive relief, stating in part that courts "shall have the power to grant injunctions . . . to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), states:

> (1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> > shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In pertinent part, Texas Business & Commerce Code Section 16.103(a) provides that "the owner of a mark that is famous and distinctive . . . in this state is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark."

**2. Imminent Infringement**

IDM argues that Violet Crown has not pled an injury because it has not demonstrated that infringement is imminent. Dkt. 21 at 3. Although not entirely clear, IDM appears to contend that Violet Crown lacks standing to bring this action because IDM's mark "is not sufficiently fixed or definite as to allow a court to determine if infringement has occurred." *Id*. IDM submits that: "Until IDM defines and fixes its mark, it should not be at the mercy of an infringement lawsuit shaped by VCC's characterizations of what mark IDM might use in the future." *Id.* at 4.

In support of this argument, IDM cites *Vantage Trailers, Inc. v. Beall Corp.*, No. H-06-3008, 2008 WL 304747 (S.D. Tex. Jan. 31, 2008), *aff'd*, 567 F.3d 745 (5th Cir. 2009), a case readily distinguishable from the facts at hand. In *Vantage*, the plaintiff sought a declaration of non-infringement in the early-stage design of a boat, which the court found to be not "substantially fixed and definite." *Id.* at *5. Here, Plaintiff alleges that IDM is using both "The Violet Crown Amphitheater" and "The Violent Crown," in standard character and design form, in internet marketing materials. These allegations are sufficient to state a claim of likely confusion with the word mark VIOLET CROWN, whether used with or without the generic term "amphitheater."

Dkt. 9-1 ¶ 31. Accordingly, the Court finds IDM's argument that its mark is insufficiently definite misplaced at this stage of the proceeding.

### 3. Use

IDM next argues that Violet Crown cannot demonstrate success on the merits of its trademark claims under either state or federal law because it cannot show that IDM has made commercial use of a mark confusingly similar to VIOLET CROWN. "The reason for this is simple: IDM has not made a commercial use of any marks whatsoever." Dkt. 21 at 5. IDM emphasizes that "the Violet Crown Amphitheater *has not yet been built*" – "construction has not even started on the project" – and: "There are no allegations in VCC's pleadings that IDM has sold anything in connection with the phrase 'VIOLET CROWN AMPHITHEATER.'" *Id.* at 4-5.

In its Second Amended Complaint, Violet Crown alleges that IDM has posted plans for a development to include "The Violet Crown Amphitheater" at violetcrownaustin.com. Violet Crown attaches excerpts from that website displaying numerous renderings and details about IDM's planned development, which includes a 20,000-capacity amphitheater and two residential towers. Dkt. 19-1 at ¶ 31 & 50-71, Exh. G. Plaintiff alleges that "IDM intends to continue to use the VIOLET CROWN Mark in connection with the promotion of its amphitheater development and intends to continue to use the VIOLET CROWN Mark in connection with its amphitheater and related services as soon as [t]hose services are available." Dkt. 19-1 ¶ 32.

Violet Crown also attaches a November 5, 2021 article from the Austin Business Journal titled: "Environmental groups raise concerns about Violet Crown amphitheater project proposed west of Austin." Dkt. 19-1 at 72-78, Exh. H. IDM's president states in the article that "the development team aims to start vertical construction early next year. Elements of the project could open in 2023." *Id.* at 76. According to the story, a civil engineering firm submitted construction permits in

August 2021 for the project, which should cost $600 million to $750 million and is in the process of obtaining administrative approvals from the city of Austin. *Id.* at 75, 77. The story further states:

> Representatives from a number of groups – including the Nature Conservancy, Greater Edwards Aquifer Alliance, Sierra Club Austin, Save Our Springs and Save Barton Creek Association – have released statements opposing the project, with some saying they were "alarmed" after reading about it in news reports.

*Id.* at 74.

Finally, Violet Crown includes in its Second Amended Complaint a screen shot from a local television station, which used a picture of Violet Crown's movie theater at the beginning of a news story "critical of IDM's amphitheater development." Dkt. 19-1 ¶ 34. Violet Crown alleges that: "Upon information and belief, the television station believed that the 'Violet Crown' amphitheater located just outside of Austin is being built by the same company that operates the 'Violet Crown' movie theater in downtown Austin." *Id.*

The crux of the parties' dispute is whether the type of pre-sales marketing activities alleged by Violet Crown are sufficient to state a claim for injunctive relief under Lanham Act Section 43(a) and Texas Business & Commerce Code Section 16.103(a). Considering the totality of the circumstances, on the facts alleged in Violet Crown's Second Amended Complaint and the documents attached to that complaint, the Court finds that they are.

Specifically, Violet Crown alleges that IDM is using "Violet Crown Amphitheater" and the violetcrownaustin.com domain name "in connection with the promotion of IDM's amphitheater development." Dkt. 19-1 ¶ 38. Violet Crown alleges that IDM's promotion of the project under a confusingly similar mark has taken place publicly on the internet and in media reports, causing consumer confusion as to the development's association or connection with – or sponsorship, endorsement, or approval by – Violet Crown, injuring its goodwill and reputation. *Id.* ¶¶ 42-43.

The leading trademark treatise explains that:

> Injunctive relief may be obtained even before defendant has sold goods or services in connection with the accused mark. Trademark infringement under Lanham Act § 43(a) can occur in the absence of the actual sale of infringing goods or services. Pre-sales preparations such as advertising, seeking investors, shipments and other preparatory activities are often sufficient.

5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:10 (5th ed. June 2022 Update). Cases Professor McCarthy cites in support include *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178 (5th Cir. 2018), and *Young v. Vannerson*, 612 F. Supp. 2d 829 (S.D. Tex. 2009).

In *Viacom*, the Fifth Circuit affirmed the district court's grant of summary judgment to the plaintiff based on a restaurant in development to be called "The Krusty Krab," creating a likelihood of confusion with a fictional restaurant in the "SpongeBob SquarePants" animated television series. The restaurant had not yet opened, but the defendant had filed an intent-to-use application to register THE KRUSTY KRAB for restaurant services and also had "taken steps towards opening the restaurant such as leasing property, procuring equipment, purchasing domain names, and developing a comprehensive business plan." *Id.* at 193. The court concluded that "the record contains sufficient context to conduct a likelihood-of-confusion analysis." *Id.*

*Young* concerned the marks VY and INVINCEABLE, which defendants applied to register on an intent-to-use basis on January 5, 2006, one day after plaintiff Vince Young led The University of Texas to a BCS National Championship with a legendary performance in the Rose Bowl. The court denied defendants' motions to dismiss for lack of subject-matter jurisdiction and for failure to state a claim, rejecting defendants' argument – virtually identical to IDM's here – that Young's suit was premature because they had not yet used the marks in commerce. 612 F. Supp. 2d at 837. Judge Rosenthal noted that courts have found a trademark infringement claim may satisfy the use

9

in commerce element "even if a product has not actually been sold." *Id.* at 847. Young adequately stated a trademark infringement cause of action by alleging that "the defendants have undertaken extensive preparations to use the marks in commerce, including producing samples of various products incorporating the marks, testing the market, and contracting with a manufacturer," and that "consumers would presume a connection with him if the defendants sold products using the VY and INVINCEABLE marks." *Id.*

Cases Violet Crown cites are consistent with this analysis. In *N. Am. Ins. Agency, Inc. v. Bates*, No. 12-544-M, 2012 WL 12848189, at *2 (W.D. Okla. June 15, 2012), the court found allegations of a defendant's threatened use of an allegedly infringing trade name sufficient to state a claim for injunctive relief under the Lanham Act. The court reasoned:

> In this action, plaintiffs seek injunctive relief pursuant to 15 U.S.C. § 1116(a) to prevent a violation of § 1125(a) in the future, based upon the alleged statements and actions made by defendant threatening such a violation. In his motion, defendant in essence asserts that a court must wait until an actual violation occurs before it can act to prevent such a violation. Such an assertion is contrary to the law and common sense – why would Congress grant a court the power to prevent a violation when the violation would have to occur before the relief could be granted? Clearly, Congress granted courts the power to use injunctive relief under the Lanham Act for situations where a party has threatened to commit a violation of the Lanham Act and should be prevented from doing so.

*Id.* at *1. In *LeFebure Corp. v. Lefebure, Inc.*, 284 F. Supp. 617, 624 (E.D. La. 1968), too, the court entered a preliminary injunction on the basis of defendant's "threatened infringement." *Cf. Cascades of Levitt Homes, Inc. v. Cascades of Sabatello Dev. Corp., III*, 43 USPQ2d 1920, 1997 WL 588848, at *6 (S.D. Fla. Aug. 7, 1997) (granting motion for preliminary injunction and finding that plaintiff real estate developer "first established trademark usage of the name [THE CASCADES] at the time it erected billboards at the development site which read 'The Cascades' 'Coming Soon'").

In sum, the Court finds that in its Second Amended Complaint, Violet Crown has stated a plausible claim that consumer confusion and dilution are likely based on IDM's alleged use of marks incorporating VIOLET CROWN to promote its amphitheater development on the internet. Accordingly, Violet Crown has sufficiently alleged a claim to enjoin IDM from using "Violet Crown Amphitheater" in association with its amphitheater development under Section 43(a) of the Lanham Act and Texas Business & Commerce Code Section 16.103(a).

## IV. Order

Based on the foregoing, Violet Crown's Motion for Leave to Amend (Dkt. 19) is **GRANTED**.

## V. Recommendation

Because Violet Crown is permitted to file its Second Amended Complaint, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DISMISS AS MOOT** Defendant International Development Management's Motion to Dismiss Plaintiff Violet Crown Cinemas, LLC's First Amended Complaint (Dkt. 14) without prejudice to re-filing.

It is **ORDERED** that the Clerk **REMOVE** this case from the undersigned Magistrate Judge's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## VI. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to

11

proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on June 9, 2022.

                                                SUSAN HIGHTOWER
                                                UNITED STATES MAGISTRATE JUDGE