IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| VIOLET CROWN CINEMAS, LLC, § § § Plaintiff, § § v. § 1:21-CV-1142-RP § INTERNATIONAL DEVELOPMENT § MANAGEMENT, LLC, WATERSHED 5 § STUDIOS, LTD, and WATERSHED 5 § MANAGEMENT, LLC, § § Defendants. § | |

## **ORDER**

Before the Court is Plaintiff Violet Crown Cinemas, LLC's ("Violet Crown") Motion for Preliminary Injunction and its corresponding Appendix, (Dkts. 27, 28),[1] asking this Court to enjoin Defendant International Development Management, LLC ("IDM") from using Violet Crown's trademarks. For the reasons discussed below, the Court finds that Violet Crown has not carried its burden to establish likelihood of success on the merits or irreparable harm, and accordingly will deny Violet Crown's motion.

## **I. BACKGROUND**

This case is about the entertainment industry of the "City of the Violet Crown." "Violet Crown" has been used to describe Austin since the 1890s. (IDM's Resp., Dkt. 34, at 7). But, as Violet Crown's counsel noted during the hearing, the term grew in popularity after Violet Crown opened its first movie theater in 2011. (Banowsky Dec., Dkt. 28, at 6, 8). Now, multiple businesses and social groups use the moniker. (IDM's Resp., Dkt. 34, at 7).

---

[1] The Court also considers the related responsive briefings, (Dkts. 34, 35).

Today, Violet Crown operates that same theater as "a boutique movie theater in downtown Austin." (*Id.* at 1). According to owner William S. Banowsky, Jr., Violet Crown has become "part of the Austin Community." (Banowsky Dec., Dkt. 28, at 6). Banowsky claims the Austin theater also offers occasional live music performances and, during the hearing, acknowledged there had been at least five of these events over the past 11 years. (*Id*). The company also "makes regular charitable donations of its theater services" to be "auctioned off to the public at local Austin charitable fund-raising events," and "partners with local vendors whenever possible . . . always looks to connect with community members." (*Id.*; *see also id.* at 8–9). By fall 2022, Violet Crown will have theaters in four cities, and the Austin theater alone "realizes millions of dollars in sales revenue annually." (*Id.* at 6).

Violet Crown Cinemas owns five U.S. Trademark registrations. Registration numbers 4795304, 4979206, and 5691295 cover the text of the mark VIOLET CROWN in connection with "bar and restaurant services . . . in Class 43," "production and distribution of motion pictures, in Class 41," and "CLASS 41: Movie theaters," respectively. (Registrations '295, '206, '304, Dkt. 28, 16–20). Registration number 4367376 covers the text of the mark VIOLET CROWN CINEMA in connection with "movie theaters, in Class 41." (Registration '376, Dkt. 28, 24). Finally, registration number 4279711 covers the text and design of Violet Crown's logo.

# VIOLET CROWN

(Registration '711, Dkt. 28, 22). Violet Crown also claims that their VIOLET CROWN mark is famous and distinctive for the purposes of Tex. Bus. & Comm. Code § 16.103. (Prelim. Inj. Mot., Dkt. 27, at 17–18).

Defendant IDM is developing a real estate project in Southwest Austin, near Bee Cave Town. (IDM's Resp., Dkt. 34, at 3). The hallmark of this project will be what IDM currently calls

2

the Violet Crown Amphitheater, "a 20,000-seat outdoor amphitheater that can host live music events." (*Id.*). IDM has also used the phrase "Violet Crown" in association with various project amenities, including a distillery, a driving range, and a nightclub. (*Id.*). Notably, the project does not include a movie theater, and the accompanying restaurant does not bear the name "Violet Crown." (*Id.*). IDM has promoted this project through the website www.violetcrownaustin.com, and uses the following graphic in advertising:



(*Id.* at 4).

Violet Crown claims that Banowsky began receiving inquiries about the project from individuals who believed Violet Crown was the intended developer in October 2021. (Banowsky Dec., Dkt. 28, at 10). At the hearing, Banowsky testified that there were five inquiries: (1) a LinkedIn message from Ian Kristopher, sent to a Mr. Gill, asking about employment opportunities at the amphitheater; (2) an email from Grant DeSantis, who offered point of sale technologies and asked if Violet Crown was involved with the amphitheater; (3) a call from Janie Linfesty, a friend who asked Banowsky if he wanted to build a similar amphitheater in Santa Fe; (4) a call from McKay Otto and Dr. Keith Coffee, friends of Banowsky who expressed concern about Violet Crown's alleged involvement with the project; and (5) a call from Tim McClure, a friend of Mr. Banowsky who expressed concern about Violet Crown's alleged involvement with the project. Mr. Banowsky further testified that during each of these inquiries he quickly corrected any confusion.

In reaction to these inquiries, "Violet Crown's counsel sent IDM a letter objecting to its use of the VIOLET CROWN Mark" on November 16, 2021. (Prelim. Inj. Mot., Dkt. 27, at 8 (citing Banowsky Dec., Dkt. 28, at 11)). IDM's counsel sent Violet Crown's counsel "a letter of introduction but otherwise did not respond to the matters raised in [Violet Crown]'s letter." (Reply, Dkt. 35, at 1). Then, on December 16, 2021, Violet Crown filed this lawsuit. (IDM's Resp., Dkt. 34, at 4; *see also* Compl., Dkt. 1). Violet Crown amended its complaint on January 26, 2022, (Dkt. 9), and then again on June 9, 2022, (Dkt. 24). Seven months after its original complaint, on July 14, 2022, Violet Crown filed an application for temporary restraining order and preliminary injunction, (Prelim. Inj. Mot., Dkt. 27), which the Court heard as a motion for preliminary injunction. The Court held a hearing on the motion for preliminary injunction on August 31, 2022, at which it took evidence and heard arguments by the parties. (Minute Entry, Dkt. 43).

## II. STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). A movant cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

## III. DISCUSSION

4

Plaintiff Violet Crown has failed to meet its burden for a preliminary injunction. The Court first addresses the issue of whether Violet Crown has met its burden of showing a likelihood of success on the merits. Although the Court finds that Violet Crown fails to meet its burden to show a likelihood of success on the merits, the Court additionally evaluates whether Violet Crown has met its burden of showing irreparable harm for either of these claims, assuming that Violet Crown can demonstrate a likelihood of success on the merits.

### A. Likelihood of Success on the Merits

To prevail on a trademark infringement claim, a plaintiff must establish: (1) ownership in a legally protectable mark; and (2) infringement by demonstrating a likelihood of confusion. *Bd. of Supervisors for Louisiana State Univ. Ag. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008). Ownership of a mark is established by actual use in the market. For likelihood of confusion, the Court looks at the following "digits of confusion": (1) the type of mark infringed; (2) the similarity between the marks; (3) the similarity between the products or services; (4) the identity of retail outlets and purchasers; (5) the identity of the advertising media use; (6) the defendant's intent; (7) evidence of actual confusion; and (8) the degree of care exercised by potential purchasers. *Springboards to Edu., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 750 (5th Cir. 2022). Infringement claims under Texas common law are analyzed under the same framework as federal trademark law. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010). Here, Violet Crown has demonstrated it has trademark rights over the VIOLET CROWN mark for movie theaters, movie distribution, and bars and restaurants, but not that it has rights over the mark for the entire "live entertainment" category. Furthermore, Violet Crown has failed to demonstrate its trademark is famous as required by Tex. Bus. & Comm. Code § 16.103.

1. Violet Crown Fails to Show Its Trademark Rights Extend to "Live Entertainment"

5

Violet Crown first must show that it possesses legally protectable trademark rights before the Court can reach the issue of whether IDM has infringed or will infringe Violet Crown's trademark. The parties do not dispute that Violet Crown owns several trademark registrations for the words VIOLET CROWN name and its design mark. Instead, the parties dispute whether Violet Crown's rights extend to services other than movie theaters, movie distribution, and bars and restaurants. Violet Crown claims superior rights to use the VIOLET CROWN mark for "live entertainment services." (Prelim. Inj. Mot., Dkt. 27, at 14). Violet Crown argues that (1) the VIOLET CROWN word mark is a strong, distinctive mark, and IDM's attempt to distinguish their mark with a descriptive name does not render it distinct from Violet Crown's mark; and (2) it has used its mark in various services and events, including live entertainment events, across Travis County. In response, IDM argues that the words VIOLET CROWN are a generic descriptor for Austin, TX, and that Violet Crown's rights over the words VIOLET CROWN are limited to film and film related services, and bars and restaurants.

Violet Crown has failed to show its trademark rights extend to services other than movie theaters, movie distribution, and bars and restaurants. While Violet Crown's federal registration for their VIOLET CROWN word mark consists of the words "VIOLET CROWN," its trademark registration "is only prima facie evidence of [its] exclusive right to use the mark in commerce for the services specified in the registration." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (citing 15 U.S.C. § 1115(a)). Violet Crown's registrations are in (1) Class 41, movie theaters; (2) Class 41, production and distribution of motion pictures; and (3) Class 43, bar and restaurant services. IDM's project does not overlap with any of these categories. IDM intends to offer an amphitheater, a driving range, and a condominium under the "Violet Crown" name.

While Violet Crown has a successful movie theater business that uses its VIOLET CROWN mark and arguably has superior rights to this mark and the words "VIOLET CROWN" for movie theaters, movie distribution, and bars and restaurants, Violet Crown does not have superior rights in connection with other "live entertainment" services that would enable it to stop IDM from using its mark on its services. Violet Crown has not used its mark on the kind of "live entertainment" services IDM intends to offer or competed in that space. "Ownership of trademarks is established by use." *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990). A plaintiff cannot acquire trademark rights unless and until it can show "prior use" meaning "[services] bearing the mark are placed on the market." *Alamo Area Mut. Hous. Ass'n, Inc. v. Lazenby*, No. 5:17-CV-634-DAE, 2017 WL 7052253, at *7 (W.D. Tex. July 28, 2017). Violet Crown does not use its mark to compete in the market for condominiums, driving ranges, or amphitheaters.

Violet Crown argues that its services extend to "live entertainment," and IDM disputes this assertion, arguing that Violet Crown offers almost exclusively film premieres, film festivals, and film screenings. (*Compare* Prelim. Inj. Mot., Dkt. 27, at 10, *with* IDM's Resp., Dkt. 34, at 9). Violet Crown's argument fails because it has not provided evidence to that point. To demonstrate its rights cover the services IDM plans to offer, Violet Crown characterizes its services as "live entertainment services identical, albeit on a smaller scale, to the live entertainment services IDM proposes to offer." (Prelim. Inj. Mot., Dkt. 27, at 14). But at the hearing, Violet Crown only presented evidence of five live music events across 11 years of operating its Austin theater. The company emphasized the fact that other entities rent its facilities to host live entertainment but provides no evidence that any of those events can in any way be attributed to its company. Despite Violet Crown's claims, the Court remains unconvinced that Violet Crown has shown prior use.

7

Violet Crown also argues that, even if its services are different, it already participates in the space of "live entertainment" and the live music events IDM intends to offer are within its natural zone of expansion. (Reply, Dkt. 35, at 7). Violet Crown could prove that live concerts would be within its natural zone of expansion by showing that its customers believe it to be, even if that perception is false. *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 826 (S.D. Tex. 1999). Violet Crown, however, has not shown that its customers believe that. Rather, Violet Crown offered as evidence series of magazine and newspaper articles with no specific connection to its theaters, and a likelihood of confusion survey that suggests customers could be confused by the marks, but not that live music or other live entertainment is within Violet Crown's natural zone of expansion. The Court expresses no opinion on the specific evidence required to establish customer beliefs about the natural zone of expansion. However, it is clear that Violet Crown's meager offerings here fall short of the proof necessary to sustain that conclusion. From a single, unsupported assertion that "live entertainment" is their natural zone of expansion, the Court cannot jump to the conclusion that Violet Crown's customers believe that the kind of live music events IDP intents to offer are within Violet Crown's natural zone of expansion.

Finally, while Violet Crown's registered mark—including the word mark VIOLET CROWN—may be distinctive, Violet Crown seems to be making a claim to the words VIOLET CROWN more broadly and outside of cinema and bars and restaurants. Violet Crown argues that the mark VIOLET CROWN is strong in Travis County because of its community focus model, to the point that it does not "*need to advertise its services to traditional advertising media.*" (Reply, Dkt. 35, at 4). But this argument does little to demonstrate that the mark is strong outside the context of movie theaters, movie distribution, and bars and restaurants. And although the term "Violet Crown" rose in popularity after Violet Crown first opened its doors in 2011, the words have been used by

multiple groups and businesses in Austin, including the Violet Crown Social Club, the Violet Crown Winery, the Violet Crown Soap Company, the Violet Crown Trail, Violet Crown Yoga, and more. (*See, e.g.*, IDM's Resp., Dkt. 34, at 7; Exhs., Dkt. 45, at 73–74). In all, based on this evidence, Violet Crown would have difficulty claiming broad trademark rights to the words VIOLET CROWN outside the category of film and film-related services.

2. Violet Crown Fails to Show its Mark is Famous Under Section 16.103(c)

Violet Crown also seeks injunctive relief pursuant to Tex. Bus. & Comm. Code § 16.103(c). Under § 16.103(c), a movant is entitled to injunctive relief "to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark." The Texas anti-dilution statute was intended to make the Texas standard consistent with federal law; therefore, the federal standard applies to Texas dilution claims. *Galvotec Alloys, Inc. v. Gaus Anodes Int'l, LLC*, No. 7:13-CV-664, 2014 WL 6805458, at *9 (S.D. Tex. Dec. 2, 2014). To establish a claim for trademark dilution, a movant must show (1) its mark is famous; and (2) that dilution is occurring "through blurring or tarnishing." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 (5th Cir. 2004).

A mark is famous "if the mark is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner." Tex. Bus. & Comm. Code § 16.103(b). A mark does not need to have nationwide or statewide fame to qualify. A mark that is famous to a specific geographic area within Texas may be entitled to protection within that area. Tex. Bus. & Comm. Code § 16.103(c). In evaluating whether a mark is famous, the court can consider (1) the duration, extent, and reach of the publicity of the mark; (2) the amount, volume, and geographic extent of sales under the mark in the state; (3) the

9

extent of actual recognition of the mark; and (4) whether the mark is registered. Tex. Bus. & Comm. Code § 16.103(b)

As with its trademark claim, Violet Crown has not provided enough evidence to establish a likelihood of success on is dilution claim because Violet Crown has not provided sufficient evidence that its mark is famous. Although Violet Crown has demonstrated its mark is registered, (Registrations, Dkt. 27, at 16–25), the only evidence of the extent of publicity, sales, or recognition comes from Banowsky's declaration. (Dkt. 28, at 5–14). Given the lack of evidence, Violet Crown has not established a likelihood of success on the first requirement for a dilution claim. Thus, Violet Crown is not entitled to preliminary injunctive relief pursuant to Tex. Bus. & Comm. Code § 16.103(c) at this time.

### B. Irreparable harm

In trademark cases under the Lanham Act, a party alleging trademark infringement is entitled to a presumption of irreparable harm if it has shown a likelihood of success on the merits. 15 U.S.C. § 1116(a). Even if the Court assumes Violet Crown can demonstrate a likelihood of success on the merits, this Court finds that the presumption of irreparable harm has been rebutted by Violet Crown's delays in requesting relief. Violet Crown was aware of IDM's alleged wrongdoing nine months before applying for this preliminary injunction, as evinced by its cease-and-desist letters and Banowsky's own testimony, and failed to provide adequate justification for this delay. (Prelim. Inj. Mot., Dkt. 27, at 8 (citing Banowsky Dec., Dkt. 28, at 11)). Furthermore, Violet Crown has presented little evidence that customers associate Violet Crown with the negative publicity for the amphitheater, further undermining the claim that it has suffered or it will suffer an irreparable injury.

On November 16, 2021, Violet Crown's counsel sent a letter to IDM's counsel informing IDM that Violet Crown objected to the use of the name "Violet Crown" with relation to the project.

10

(Letter, Dkt. 28, at 54). Counsel went on to explain that IDM's use "would clearly be confusingly similar to [Violet Crown]'s use of its VIOLET CROWN trademark," and that the negative attention the project was generating was harming Violet Crown's trademark. Finally, counsel requested that IDM agree "to refrain from using the name Violet Crown in connection" to the development project and threatened to "pursue all of its available remedies" if IDM was "unwilling to do so." (*Id.*). By December 16, 2021, IDM had failed to respond to counsel's letter, and Violet Crown's counsel proceeded by filing this suit. (Compl., Dkt. 1).

Although Violet Crown sent IDM a cease-and-desist letter only a month after receiving phone calls and messages about the project, Violet Crown waited until July 2022 to file its motion seeking preliminary injunction. "A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." Charles Alan Wright & Arthur R. Miller, et al., 11a Federal Practice & Procedure § 2948.1 (3d ed., Apr. 2017 update). Undue delay in seeking a preliminary injunction tends to negate the contention that the feared harm will truly be irreparable. *See Gonannies, Inc. v. Goupair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (finding that a delay of over six months rebutted any presumption of irreparable harm). "Delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *Massimo Motor Sports LLC v. Shandong Odes Indus. Co.*, No. 3:21-CV-02180-X, 2021 WL 6135455, at *2 (N.D. Tex. Dec. 28, 2021).

Violet Crown points to *Daily Instruments Corp. v. Heidt* to support their argument that the delay in pursuing the preliminary injunction was reasonable. 99 F. Supp. 2d 553, 570 (S.D. Tex. 2014) ("[D]elay will not negate a finding of irreparable harm where the plaintiff has a good explanation."). The court in *Daily Instruments* noted that the defendants contributed to the delay by waiting until the final business day before the state-court hearing was scheduled to remove the case

11

to federal court and by opposing accelerated discovery in both state and federal court. *Id.* Here, Violet Crown claims its delay "was the result of IDM's dilatory litigation tactics." (Reply, Dkt. 35, at 3). But the "tactics" referenced in the reply—e.g., filing a motion to dismiss in lieu of an answer— were nothing other than run-of-the-mill steps in litigation, and none of them unreasonably prevented Violet Crown from seeking preliminary relief. And Violet Crown does not present any additional evidence to suggest that IDM acted in bad faith, as did the *Daily Instruments* defendants, to prevent Violet Crown from seeking preliminary relief. Violet Crown's lack of justification for the amounts to undue delay. Instead, Violet Crown's undue delay in seeking a preliminary injunction rebuts any presumption of irreparable harm to which it may be entitled under the Lanham Act. *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2017 WL 5588190, at *3 (W.D. Tex. Nov. 20, 2017) ("Undue delay in seeking a preliminary injunction tends to negate the contention that the feared harm will truly be irreparable.").

Furthermore, Violet Crown presented little evidence that it will suffer imminent and irreparable harm. In its motion, Violet Crown argues that IDP's project is damaging its reputation and that it "will never be able to ascertain the monetary value of the damage currently being done to its goodwill by the consuming public's association of Violet Crown with this extremely unpopular amphitheater." (Prelim. Inj. Mot., Dkt. 27, at 18). But Violet Crown failed to present convincing evidence that this is the case. Its most salient pieces of evidence were the "repeated calls and questions regarding IDM's development from individuals" who assumed Violet Crown was related to the project and an image of the Austin theater in a short TV broadcast that discussed the backlash toward the project. (*Id.* at 16). However, Banowsky was only able to identify five inquiries during the hearing. Most of these involved Mr. Banowsky's friends or possible industry contacts, and none

appear to have affected Violet Crown's reputation. Absent this showing of irreparable harm, Violet Crown is not entitled to a preliminary injunction.

## III. CONCLUSION

For these reasons, **IT IS ORDERED** that Plaintiff Violet Crown Cinemas, LLC's Motion for Preliminary Injunction, (Dkt. 27), is **DENIED**.

**SIGNED** on September 15, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE